IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

K.A.
a minor, by and through her parents
and next friends, F.A. and A.A. and
F.A. and K.A.,

    Plaintiffs,

     v.

                      CIVIL ACTION FILE
                      NO. 1:11-CV-727-TWT

FULTON COUNTY SCHOOL
DISTRICT,

    Defendant.

## ORDER

This is an action under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 et seq. It is before the Court on the Plaintiffs' Motion for Order to Enforce the Maintenance of Placement Right of K.A. [Doc. 24], which is GRANTED.

## I. Introduction

The Individuals with Disabilities Education Act ("IDEA") provides federal assistance to states that provide a free appropriate public education ("FAPE") to children with disabilities. 20 U.S.C. § 1412(a)(1)(A). States must identify children in need of special education and develop an "individualized education program"

("IEP") that meets the requirements of the Act.  If the parents disagree with the IEP or believe that their child has been denied a FAPE, they are entitled to an administrative hearing.  20 U.S.C. § 1415(f)(1)(A).  Either party may appeal the decision of the administrative law judge to the United States District Court.  20 U.S.C. § 1415(i)(2)(A).

Plaintiff K.A. is a seven-year old student at Woodland Charter Elementary School who is eligible for special education and related services under the IDEA.  On May 13, 2010, K.A.'s parents and other members of the IEP team agreed on a placement for the 2010-2011 school year.  The following September, the IEP team, including K.A.'s parents, met to review her IEP.  The team decided to amend K.A.'s IEP over her parents' objections, and K.A. was switched to a more restrictive placement at a different school.  According to the complaint, the Fulton County School District ("FCSD") told K.A.'s parents that the IEP change would be implemented without their consent unless they requested an administrative due process hearing.  On October 12, 2010, K.A. and her parents requested a hearing. They argued that an IEP amendment requires the consent of all members of the IEP team, including the parents, and that without such consent, the school district must file a due process request to amend the IEP.  The administrative law judge rejected this argument and granted the FCSD's Motion for Summary Determination.  K.A. and her

parents then filed this action appealing the administrative law judge's decision and asserting a § 1983 claim against the FCSD. This case is currently before this Court in the discovery phase.  During the pendency of this appeal, the Plaintiffs seek to enforce IDEA's "maintenance of current educational placement" provision ("stay-put provision").  20 U.S.C. § 1415(j).

## II.  Discussion

A.  Stay-put Provision

The stay-put provision states:

> Except as provided in subsection (k)(4), during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child, or, if applying for initial admission to a public school, shall, with the consent of the parents, be placed in the public school program until all such proceedings have been completed.

20 U.S.C. § 1415(j).  "The Supreme Court has held that Section 1415(j) is 'unequivocal,' stating 'plainly' that a school board *shall not* change the current educational placement unless or until it can agree on an alternative placement with the parents, or until the issue is resolved through the administrative hearing process." C.P. v. Leon County School Bd. Florida, 483 F.3d 1151, 1156 (2007) (citing Honig v. Doe, 484 U.S. 305, 323 (1988) (emphasis and internal quotations in original)). "Congress's clear instruction to the parties is to maintain the status quo unless and

until one of two conditions is met: (1) the proceedings have run their course, or (2) the parties can otherwise agree." C.P., 483 F.3d at 1158 (citing Honig, 484 U.S. at 323). The Court's task is thus to determine what the IEP was prior to the commencement of proceedings, and then to determine whether the parties have agreed to any changes since that time.

        B.    <u>IEP at the Commencement of Litigation</u>

On October 12, 2010, the Plaintiffs filed a due process hearing request, and thus triggered the stay-put provision. The parties dispute what the IEP was on this date. The parties agree that there was an IEP agreement in Spring 2010, and that this IEP did not require that K.A. receive a "categorical" or personal assistant. On October 1, 2010, FCSD convened another IEP meeting for K.A. and proposed changing her placement, effective October 11, 2010. At this meeting, FCSD recommended that K.A. receive a categorical assistant (a recommendation with which the Plaintiffs agreed), and recommended that K.A. be placed in classes and receive services different than those she received and was currently receiving under the Spring 2010 IEP (a recommendation with which the Plaintiffs disagreed).

FCSD disputes that it agreed to simply supplement the Spring 2010 IEP with a categorical assistant. FCSD maintains that the categorical assistant proposal was part of FCSD's larger proposal that K.A. also be placed in different classes and

receive different services.  FCSD reasons that the Plaintiffs cannot choose one part of the proposal that they like and state that an agreement has been reached when that part was predicated on agreement to the entire IEP.  However, the Plaintiffs present a different version of the facts.  The Plaintiffs contend that an agreement was reached on the issue of the categorical assistant alone, and that agreement to the categorical assistant was not contingent on agreement to the other parts of the proposal.

While the Court agrees with FCSD's legal reasoning regarding the Plaintiffs' inability to "pick and choose" portions of the IEP, FCSD does not provide the Court with sufficient evidence for the Court to adopt its version of the facts.  The Plaintiffs provide affidavits from K.A.'s parents and minutes from the October 1, 2010 meeting stating that the categorical assistant was implemented immediately and prior to any proposed placement change.  (F.A. Aff. ¶ 10; A.A. Aff. ¶ 5.)  FCSD's minutes from the October 1 IEP meeting state, "The committee agreed to amend the Individual Education Plan to include the Categorical Assistant."  (Pls.' Mot. for Order, Ex. 8, at 29.)  The minutes do not state that the committee agreed to amend the IEP with the categorical assistant if K.A.'s parents agreed to the other proposed changes.  (Id.)  K.A.'s parents further state that the categorical assistant was provided prior to the due process hearing request and continued throughout the remainder of the 2010-2011 school year.  (F.A. Aff. ¶ 12; A.A. Aff. ¶ 6.)

FCSD presents no independent evidence but directs the Court to consider three pieces of evidence from the Plaintiffs' own exhibits. These exhibits are supposed to support the contention that the "Plaintiffs have long been aware of [the stay-put placement from Spring 2010 being in effect], as well as the fact that there has been no agreement to alter this placement, despite their current protestations otherwise." (Def.'s Br. in Opp'n to Pls.' Mot. for Order, at 3.) While the three exhibits show the Plaintiffs' current protestations, they do nothing to strengthen the credibility of FCSD's claim that the Plaintiffs have been aware of the Spring 2010 IEP being the governing IEP for stay-put. All three exhibits were created by either a FCSD employee or legal counsel less than a month before the Plaintiffs filed this Motion. All three exhibits are unsworn statements written by persons aware of pending litigation. The first is an email from Jacqueline Radford, the IST for the Sandy Springs Cluster, dated Monday, August 15, 2011. (Pls.' Mot. for Order, Ex. 3c.) In addition to the reliability problems mentioned above, FCSD has provided no information regarding Ms. Radford's knowledge of the prior IEP meetings. The second and third pieces of evidence referenced are emails written by Christy Calbos, one of the lawyers for FCSD, to Jonathan Zimring, counsel for the Plaintiffs, dated Monday, August 22, 2011 and Tuesday, August 30, 2011, respectively. (Pls.' Mot. for Order, Exs. 5 & 7.) The Court does not find that these emails support FCSD's

claim that the Spring 2010 IEP has been in effect or that the Plaintiffs had any such knowledge.

Based on the evidence before the Court, the Court determines that both parties agreed to a categorical assistant for K.A. at the IEP meeting on October 1, 2010, and that a categorical assistant was thus part of the governing IEP on October 12, 2010, when the Plaintiffs filed a due process hearing request. During these proceedings K.A. shall have a categorical assistant as mandated by IDEA's stay-put provision.

C.    Subsequent IEP Meetings

FCSD and K.A.'s parents engaged in subsequent IEP meetings from March 2011 until May 16, 2011. As the Court previously mentioned, an IEP can be changed during proceedings governed by the stay-put provision if both parties agree to the change. C.P., 483 F.3d at 1158. FCSD's brief does not provide any evidence of events that occurred after the Plaintiffs filed a due process hearing request on October 12, 2010. FCSD does state that there have been no agreements to alter the Spring 2010 IEP. (Def.'s Br. in Opp'n to Pls.' Mot. for Order, at 3.)[1]

---

[1]FCSD states that "because they have consistently sought litigation against the District, K.A.'s 'stay-put' placement has been that described in her Spring 2011 IEP." (Def.'s Br. in Opp'n to Pls.' Mot. for Order, at 2-3.) (The Court assumes that FCSD makes a typo and means to say "Spring 2010 IEP" because FCSD elsewhere alludes to the Spring 2010 IEP being in effect and does not explain what a Spring 2011 IEP would cover.)

The Plaintiffs contend that both parties agreed to additional services and a changed delivery model during IEP Team meetings between March 2011 and May 16, 2011.  (Pls.' Mot. for Order, at 2.)  At the May 16, 2011 IEP meeting, both parties agreed that K.A. would be trained on the DynaVox, a dynamic communication device, and that there would be a progress meeting after four and a half weeks to determine if additional supports were required.  (F.A. Aff. ¶ 16; Pls.' Mot. for Order, Ex. 12 at 39 & Ex. 13 at 14-15.)  Also at the May 16, 2011 IEP meeting, both parties agreed that K.A. would participate in a Team Taught class.  (F.A. Aff. ¶ 18; Pls.' Mot. for Order, Ex. 12 at 41.)  Both parties also reaffirmed their desire for K.A. to have a categorical assistant.  (Pls.' Mot. for Order, Ex. 12 at 39.)  The implementation of the new goals and objectives agreed to during the Spring 2011 IEP meetings, along with the DynaVox, Team Taught classes and necessary related services, the team meetings and 4 week reports, and the categorical assistant shall all be provided to K.A. as agreed to by the parties while these proceedings continue.

The Court is confused why FCSD has not presented any affidavits from persons who can attest to the results of the IEP meetings on October 1, 2010, March 23 and 31, 2011, and May 2011.  In the absence of evidence supporting FCSD's assertion that no agreements were reached, the Court cannot help but find that the Plaintiffs'

affidavits and minutes of the meetings support their version of the facts that an agreement was reached before FCSD attempted to unilaterally revoke it.

### III.   Conclusion

For the reasons stated above, the Plaintiffs' Motion for Order to Enforce the Maintenance of Placement Right of K.A. [Doc. 24] is GRANTED.

SO ORDERED, this 15 day of November, 2011.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge