IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

K.A.
a minor, by and through her parents
and next friends, F.A. and A.A. and
F.A. and K.A.,

    Plaintiffs,

     v.

FULTON COUNTY SCHOOL
DISTRICT,

    Defendant.

CIVIL ACTION FILE
NO. 1:11-CV-727-TWT

ORDER

This is an action under the Individuals with Disabilities Education Act

("IDEA"), 20 U.S.C. §§ 1400 et seq. It is before the Court on the Plaintiffs' Motion

for Summary Judgment [Doc. 65] and the Defendant's Motion for Summary Judgment

[Doc. 69]. For the reasons set forth below, the Court DENIES the Plaintiffs' Motion

for Summary Judgment and GRANTS the Defendant's Motion for Summary

Judgment.

I. Background

The Individuals with Disabilities Education Act ("IDEA") provides federal

assistance to states that provide a free appropriate public education ("FAPE") to

children with disabilities. 20 U.S.C. § 1412(a)(1)(A). States must identify children in need of special education and develop an "individualized education program" ("IEP") that meets the requirements of the Act. If the parents disagree with the IEP or believe that their child has been denied a FAPE, they are entitled to an administrative hearing. 20 U.S.C. § 1415(f)(1)(A). Either party may appeal the decision of the administrative law judge to the United States District Court. 20 U.S.C. § 1415(i)(2)(A).

Plaintiff K.A. is a seven-year old student at Woodland Charter Elementary School who is eligible for special education and related services under the IDEA. On May 13, 2010, K.A.'s parents and other members of the IEP team agreed on a placement for the 2010-2011 school year. The following September, the IEP team, including K.A.'s parents, met to review her IEP. The team decided to amend K.A.'s IEP over her parents' objections, and K.A. was switched to a more restrictive placement at a different school. According to the Complaint, Defendant Fulton County School District ("FCSD") told K.A.'s parents that the IEP change would be implemented without their consent unless they requested an administrative due process hearing. On October 12, 2010, K.A. and her parents requested a hearing. They argued that an IEP amendment requires the consent of all members of the IEP team, including the parents, and that without such consent, the school district must file

a due process request to amend the IEP.  The administrative law judge (ALJ) rejected

this argument and granted the FCSD's Motion for Summary Determination.  K.A. and

her parents then filed this action appealing the ALJ's decision and asserting a § 1983

claim against the FCSD [Doc. 1].  On April 28, 2011, FCSD filed a Motion to Dismiss

[Doc. 5], which this Court denied on June 22, 2011 [Doc. 17].  On March 13, 2012,

the Plaintiffs filed a Motion for Summary Judgment [Doc. 65] and the Defendant filed

a Motion for Summary Judgment [Doc. 69].  The motions are now before the Court.

II.  <u>Standard of Review forAdministrative Decisions Regarding IDEA Actions</u>

When reviewing an administrative decision regarding an IDEA action, the usual

Rule 56 summary judgment principles do not apply.  <u>Loren F. v. Atlanta Indep. Sch.</u>

<u>Sys.</u>, 349 F.3d 1309, 1313 (11th Cir. 2003).  The Court should decide the IDEA action

on the basis of the administrative record.  <u>Id.</u> at 1313 n. 4.  Since no IDEA jury trial

right exists, the Court should decide an IDEA case on a summary judgment motion

even when material facts are in dispute, and should base its decision on the

preponderance of the evidence.  <u>Id.</u> at 1313.  Yet, "the provision that a reviewing court

base its decision on the preponderance of the evidence is by no means an invitation

to the courts to substitute their own notions of sound educational policy for those of

the school authorities which they review." <u>Board of Educ. of Hendrick Hudson Cent.</u>

<u>Sch. Dist., Westchester Cnty. v. Rowley</u>, 458 U.S. 176, 206 (1982) (internal

quotations omitted).

This Court "conducts an entirely *de novo* review of the ALJ's findings and has discretion to determine the level of deference it will give to the ALJ's findings." CP v. Leon Cnty. Sch. Bd. Fla., 483 F.3d 1151, 1156 n. 4 (11th Cir. 2007), citing School Bd. of Collier Cnty., Fla. v. K.C., 285 F.3d 977, 983 (11th Cir. 2002); also see Jefferson Cnty. Bd. of Educ. v. Breen, 853 F.2d 853, 857 (11th Cir. 1988). But the ALJ's ruling is entitled to "due weight." Loren F. 349 F.3d at 1314; Rowley, 458 U.S. at 206 (1982). Compare Doe v. Alabama State Dep't of Educ., 915 F.2d 651, 657 n. 3 (11th Cir. 1990) ("The court must consider the administrative findings of fact, but is free to accept or reject them") with Loren F., 349 F.3d at 1314 n. 5 ("[A]dministrative factfindings are considered to be *prima facie* correct, and if a reviewing court fails to adhere to them, it is obliged to explain why") (internal quotations omitted) and Cory D. v. Burke Cnty. Sch. Dist., 285 F.3d 1294, 1298 (11th Cir. 2002) ("[The Court] is required to respect [an ALJ's] findings when they are thoroughly and carefully made."). As the party appealing the ALJ's ruling, the Plaintiffs bear the burden of proof. Clyde K. v. Puyallup Sch. Dist., No. 3, 35 F.3d 1396, 1399 (9th Cir. 1994).

## III. Discussion

A.     The Plaintiffs' Motion for Summary Judgment

"[A] court's inquiry in suits brought under § 1415(e)(2) is two-fold. First, has the State complied with the procedures set forth in the Act? And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits? If these two requirements are met, the State has complied with the obligations imposed by Congress and the courts can require no more."  Doe v. Alabama, 915 F.2d at 655, quoting Rowley, 458 U.S. at 206-07.

In this action, the Plaintiffs only argue that their IDEA procedural rights were violated, and do not challenge whether the new IEP was invalid under the IDEA for failing to provide a free appropriate public education.  The IDEA provides important procedural rights for the parent and child in the event a child's education deviates from a mutually agreed upon IEP.  See Doe v. Alabama, 915 F.2d at 655. The IDEA grants disabled children or their parents or guardians "an opportunity ... to present a complaint with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6)(A).  Parents are entitled under the IDEA to prior written notice whenever an educational agency proposes or refuses to initiate a change in the evaluation or educational placement of their child or the

provision of a free appropriate public education to the disabled child. 20 U.S.C. § 1415(c)(1).

A procedurally defective IEP does not automatically entitle a party to relief. "In evaluating whether a procedural defect has deprived a student of a FAPE, the court must consider the impact of the procedural defect, and not merely the defect per se." K.C., 285 F.3d at 982, quoting Weiss v. School Bd. of Hillsborough Cnty., 141 F.3d 990, 994 (11th Cir. 1998). In order to obtain relief, the Plaintiffs would have to demonstrate that procedural violations resulted in substantive educational harm to K.A. or denied K.A.'s parents the right to meaningfully participate. See, e.g., Doe v. Alabama, 915 F.2d at 663; K.C., 285 F.3d at 977.

The ALJ found that (1) an IEP amendment does not require the consent of the entire IEP team (including the parents); (2) FCSD did not predetermine K.A.'s placement; (3) FCSD provided adequate prior written notice; (4) the notice of procedural safeguards provided to K.A.'s parents by FCSD was adequate; (5) K.A.'s parents were not denied their right to consent; and (6) K.A.'s parents were not denied their right to participate in the meeting process. (Compl. Exs. A & B.) The Plaintiffs argue that an IEP may not be amended at a meeting without parental consent and that K.A.'s parents were not provided with adequate procedural safeguards or prior written notice.

## 1. An IEP May Be Amended Without Parental Consent

The Plaintiffs argue that the IEP change of September 2010 was not valid because they objected. They contend that an IEP change must be agreed upon by the entire IEP team to be validly implemented. The entire IEP team includes the disabled child's parents. 20 U.S.C. § 1414(d)(1)(B)(i).

The IEP can be changed by agreement, 20 U.S.C. § 1414(d)(3)(D), or by amendment, 20 U.S.C. § 1414(d)(3)(F). The IEP can be changed by agreement without a meeting; such a change would clearly require the consent of the parents and the local educational agency. 20 U.S.C. § 1414(d)(3)(D). To change the IEP via an amendment, there must be a meeting of the entire IEP team. As provided for in the regulation which tracks 20 U.S.C. § 1414(d)(3)(F):

> Changes to the IEP may be made either by the entire IEP Team at an IEP Team meeting, or as provided in paragraph (a)(4) of this section, by amending the IEP rather than by redrafting the entire IEP. Upon request, a parent shall be provided with a revised copy of the IEP with the amendments incorporated.

34 C.F.R. § 300.324 (a)(6).

The Plaintiffs argue that the plain language of the statute and regulation require that the IEP must be amended by the entire IEP team, and thus that the entire IEP team must agree to the change. The Defendant argues that 20 U.S.C. § 1414(d)(3)(F) and 34 C.F.R. § 300.324 (a)(6) simply require that the entire IEP team be present at the

meeting, at which point the IEP team reaches a consensus that does not need to be unanimous. It is clear to the Court that the "Agreements" section of 20 U.S.C. § 1414(d)(3)(D) and the "Amendments" section of 20 U.S.C. § 1414(d)(3)(F) are to be read independently of one another. The former provides for an IEP amendment without an IEP meeting, and the latter provides for an IEP amendment with an IEP meeting.

Other courts have held that 20 U.S.C. § 1414(d)(3)(F) does not require the entire IEP team to agree to the change for the IEP to be validly changed. Parents play a "significant role" in the process, and "the concerns parents have for enhancing the education of their child must be considered by the team." <u>Winkelman ex rel. Winkelman v. Parma City Sch. Dist.</u>, 550 U.S. 516, 524 (2007) (internal quotations omitted), citing <u>Schaffer v. Weast</u>, 546 U.S. 49, 53 (2005). But the school is not required to obtain the parents' seal of approval to implement an IEP change. In <u>Rosinsky v. Green Bay Area Sch. Dist.</u>, 667 F. Supp. 2d 964 (E.D. Wis. 2009), the plaintiff argued that she did not consent to changes made to her child's IEP at the IEP team meeting, and thus the changes were invalid. The court disagreed, reasoning that "[t]he problem with plaintiff's assertion that she was not part of the consensus arrived by the IEP team is that IEP team consensus does not require parental agreement in order to satisfy the IDEA." <u>Id.</u> at 984, citing <u>Hjortness v. Neenah Joint Sch. Dist.</u>, 507

F.3d 1060, 1065-66 (7th Cir. 2007). In <u>BB. v. State of Hawaii, Dep't of Educ.</u>, 483

F. Supp. 2d 1042 (D. Hawaii 2006), the court also agreed with FCSD's interpretation

of 20 U.S.C. § 1414(d)(3)(F), holding that "[t]he IDEA does not explicitly vest within

parents a power to veto any proposal or determination made by the school district or

IEP team regarding a change in the student's placement. Rather, the IDEA requires

that parents be afforded an opportunity to participate in the IEP process and requires

the IEP team to consider parental suggestions." <u>Id.</u> at 1050-51, citing <u>McGovern v.</u>

<u>Howard Cnty. Pub. Sch.</u>, No. AMD 01-527, 2001 U.S. Dist. LEXIS 13910, at *55-*56

(D. Md. Sept. 6, 2001). The Second Circuit Court of Appeals has held that "[t]here

is no requirement in the IDEA that the parties must reach consensus on all aspects of

an IEP before it is valid. Rather, the proper recourse for parents who disagree with

the contents of their child's IEP is to request a due process hearing, as did the parents

here." <u>A.E. v. Westport Bd. of Educ.</u>, 251 Fed. Appx. 685, 687 (2d Cir. 2007)

(internal citations omitted). The Eighth Circuit Court of Appeals has held that "the

IDEA does not require that parental preferences be implemented, so long as the IEP

is reasonably calculated to provide some educational benefit." <u>Bradley ex rel. Bradley</u>

<u>v. Arkansas Dep't of Educ.</u>, 443 F.3d 965, 975 (8th Cir. 2006). This Court finds that

K.A.'s parents were not required to consent to the amendment made to K.A.'s

placement at the IEP team meetings in September and October 2010.

## 2. FCSD Was Not Required to Initiate a Due Process Hearing Request

"If a parent disagrees with the IEP or believes that his child has been denied a FAPE, he is entitled to an administrative hearing." Gwinnett Cnty. Public Sch. Dist. v. A.A., No. 1:09-CV-445, 2010 WL 2838585, at *3 (N.D. Ga. July 16, 2010). Yet, as the above quote from A.E., 251 Fed. Appx. at 687 indicates, it is incumbent upon the parents who disagree with the altered IEP to seek a due process hearing.

## 3. FCSD Provided Adequate Procedural Safeguards Notice and Prior Written Notice

FCSD was required to give K.A.'s parents written notice of the action it proposed, the factors it relied on as a basis for the proposal, other options considered by the IEP team and the reasons why these options were rejected. 34 C.F.R. § 300.503(b). FCSD was also required to give K.A.'s parents a copy of the procedural safeguards available to them. 34 C.F.R. § 300.504.[1] At the September 2, 2010

---

[1] The contents of the procedural safeguards notice "must include a full explanation of all of the procedural safeguards available under § 300.148, §§ 300.151 through 300.153, § 300.300, §§ 300.502 through 300.503, §§ 300.505 through 300.518, §§ 300.530 through 300.536 and §§ 300.610 through 300.625 relating to--
(1) Independent educational evaluations;
(2) Prior written notice;
(3) Parental consent;
(4) Access to education records;
(5) Opportunity to present and resolve complaints through the due process complaint and State complaint procedures, including--
  (i) The time period in which to file a complaint;
  (ii) The opportunity for the agency to resolve the complaint; and

meeting, the Plaintiffs received a copy of their Parent Rights Document, which contained a full description of the procedural safeguards and sources that could provide assistance in understanding the provisions of prior written notice. (Radford Aff. ¶ 5; Def.'s Br. in Opp'n to Pls.' Mot. for Summ. J., at Ex. C.) Following the meetings of September 2, 2010 and October 1, 2010, K.A.'s parents received copies of the meeting minutes and additional educational records. (Radford Aff. ¶ 8.) These IEPs and educational record documents received by K.A.'s parents explain the proposed action, provide notes of the discussions that were held in the parents' presence and explain the rationale for the proposed amendment. (Id. at ¶¶ 6, 8, 9; Def.'s Br., at Exs. D & F.) The October 1, 2010 IEP and corresponding meeting

---

(iii) The difference between the due process complaint and the State complaint procedures, including the jurisdiction of each procedure, what issues may be raised, filing and decisional timelines, and relevant procedures;
(6) The availability of mediation;
(7) The child's placement during the pendency of any due process complaint;
(8) Procedures for students who are subject to placement in an interim alternative educational setting;
(9) Requirements for unilateral placement by parents of children in private schools at public expense;
(10) Hearings on due process complaints, including requirements for disclosure of evaluation results and recommendations;
(11) State-level appeals (if applicable in the State);
(12) Civil actions, including the time period in which to file those actions; and
(13) Attorneys' fees."

34 C.F.R. § 300.504(c).

minutes describe FCSD's concerns about K.A.'s placement, discuss the team's rationale, the reasons why they believed that the current IEP setting was not appropriate, and the factors that the team considered when FCSD made its recommendation for the IEP amendment. (Id. at ¶¶ 6, 8, 9; Def.'s Br., at Exs. D & F.) Prior written notice may also be provided within ten days after a party files a due process hearing request in the event that prior written notice was not previously provided pursuant to 34 C.F.R. § 300.503; FCSD provided this notice in addition to the previously mentioned written notice. 34 C.F.R. § 300.508(e)(1); (Pls.' Br. in Supp. of Mot. for Summ. J., at Ex. 19.) This Court affirms the ALJ's finding that FCSD provided the Plaintiffs with adequate procedural safeguards notice and adequate prior written notice. (Compl., at Exs. A & B.) The procedural safeguards notice complied with 34 C.F.R. § 300.504.

B.    The Defendant's Motion for Summary Judgment

For the reasons set forth above, the Court grants the Defendant's Motion for Summary Judgment as it pertains to the Plaintiffs' arguments that FCSD procedurally violated the IDEA, and these claims are dismissed. Furthermore, the Plaintiffs have not presented evidence showing that FCSD violated 42 U.S.C. § 1983. To establish a Section 1983 violation, a plaintiff must show (1) conduct committed by a person acting under color of state law (2) that deprived her of rights, privileges or immunities

secured by the Constitution or laws of the United States. <u>Parratt v. Taylor</u>, 451 U.S. 527, 535 (1981), *overruled on other grounds by* <u>Daniels v. Williams</u>, 474 U.S. 327 (1986); <u>see also</u> <u>Duke v. Massey</u>, 87 F.3d 1226, 1231 (11th Cir. 1996). The Plaintiffs have not shown that FCSD violated their constitutional rights or any federal statute.

Furthermore, to establish Section 1983 liability against FSCD, the Plaintiffs must also show that the constitutional deprivation resulted from a custom, policy or practice of FCSD. <u>Wideman v. Shallowford Community Hosp., Inc.</u>, 826 F.2d 1030, 1032 (11th Cir. 1987), citing <u>Monell v. New York City Dept. of Soc. Serv.</u>, 436 U.S. 658, 694 (1978). Proof of a single isolated incident of unconstitutional activity generally is insufficient to impose municipal liability under <u>Monell</u>. <u>Monell</u>, 436 U.S. at 694; <u>see also</u> <u>Anderson v. City of Atlanta</u>, 778 F.2d 678, 685 (11th Cir. 1985). The Supreme Court and the Eleventh Circuit have strictly limited municipal and county liability under Section 1983. <u>Gold v. City of Miami</u>, 151 F.3d 1346 (11th Cir. 1998). A municipality or county is not liable through *respondeat superior* for the wrongful acts of its employees. <u>Id.</u> at 1350, citing <u>Monell</u>, 436 U.S. at 691. Thus, the Plaintiffs must show that FCSD's "official policy" caused the unconstitutional actions of its employees. <u>Gold</u>, 151 F.3d at 1350. To do this, the Plaintiffs must "identify a municipal 'policy' or 'custom' that caused [their] injury." <u>Id.</u>, citing <u>Bryan County Com'rs. v. Brown</u>, 520 U.S. 397 (1997). "It is only when the 'execution of the

government's policy or custom...inflicts the injury' that the municipality may be held liable under § 1983." Id., citing City of Canton v. Harris, 489 U.S. 378, 385 (1989). The Plaintiffs have not shown by a preponderance of the evidence that a FCSD policy or custom caused their injury.

Furthermore, the Court finds persuasive the argument that because IDEA has constructed a comprehensive remedial framework, a plaintiff cannot assert a Section 1983 claim based upon the IDEA. Sammons v. Polk Cnty. Sch. Bd., No. 8:04-cv-2657-T-24 EAJ, 2007 U.S. Dist. LEXIS 90725, at *13-*16 (M.D. Fla. Dec. 10, 2007), citing Holbrook v. City of Alpharetta, Ga., 112 F.3d 1522, 1531 (11th Cir. 1997) (holding that a plaintiff cannot assert a Section 1983 claim for violation of the Americans with Disabilities Act or the Rehabilitation Act because those statutes had a comprehensive remedial framework); also see S.C. v. Cobb Cnty. Sch. Dist., No. 1:06-CV-02658, at *41 (N.D. Ga. Aug. 10, 2011) ("Plaintiffs may not assert § 1983 claims for IDEA violations and finds Sammons v. Polk County School Board, No. 8:04-cv-2657-T-24 EAJ, 2007 U.S. Dist. LEXIS 90725 (M.D. Fla. Dec. 10, 2007) to be persuasive on this point."). Several Circuit Courts of Appeals have ruled that plaintiffs cannot bring Section 1983 claims for violations of the IDEA. See Diaz-Fonseca v. Puerto Rico, 451 F.3d 13, 29 (1st Cir. 2006); A.W. v. Jersey City Pub. Sch., 486 F.3d 791, 803 (3d Cir. 2007); Sellers v. School Bd. of the City of Manassas,

141 F.3d 524, 529 (4th Cir. 1998); <u>Blanchard v. Morton Sch. Dist.</u>, 509 F.3d 934, 937-38 (9th Cir. 2007); <u>Padilla v. School Dist. No. 1</u>, 233 F.3d 1268, 1273-74 (10th Cir. 2000); <u>but</u> <u>cf</u>. <u>Polera v. Board of Educ. of the Newburgh Enlarged City Sch. Dist.</u>, 288 F.3d 478, 483 n. 5 (2d Cir. 2002); <u>Marie O. v. Edgar</u>, 131 F.3d 621-22 (7th Cir. 1997).  The Defendant is entitled to summary judgment on the Section 1983 claim in Count IX(B) of the Complaint.

IV.  <u>Conclusion</u>

For the reasons set forth above, the Court DENIES the Plaintiffs' Motion for Summary Judgment [Doc. 65] and GRANTS the Defendant's Motion for Summary Judgment [Doc. 69].

SO ORDERED, this 21 day of September, 2012.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge